UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:25CR00310 SEP |
| v. | ) | |
| | ) | |
| DARRION LAMONT EVANS. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1.    **PARTIES:**

The parties are the defendant DARRION LAMONT EVANS, represented by defense counsel MARK A. HAMMER, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2.    **GUILTY PLEA:**

A.    **The Plea:**    Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One, Two, and Three of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this

Page 1 of 15

time, arising out of the events set forth in the Indictment, of which the Government is aware at this time.

**B.    The Sentence:**    The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

3.    **ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Sections 7(3) and 113(a)(8), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Assault by Strangulation are as follows:

(i)    The defendant assaulted the victim, E.W., by means of strangling;

(ii)    That E.W. was an intimate and dating partner of the defendant; and

(iii)    That the assault happened at the Gateway National Arch Park, on land acquired for the use of the United States and under its concurrent jurisdiction.

As to Count Two, the defendant admits to knowingly violating Title 18, United States

Code, Sections 7(3) and 2261(a)(1) and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Interstate Domestic Violence are:

(i)      The defendant was present within the special maritime and territorial jurisdiction of the United States;

(ii)     The defendant was so present with the intent to injure, harass, or intimidate E.W.;

(iii)    That while in the course of and as a result of such presence, the defendant committed a crime of violence against E.W., specifically assault by strangulation;

(iv)    The defendant caused serious bodily injury to E.W.; and

(v)     E.W. was an intimate and dating partner of the defendant.

As to Count Three, the defendant admits to knowingly violating Title 18, United States Code, Sections 7(3) and 2261(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Interstate Domestic Violence (Travel) are as follows:

(i)      The defendant knowingly caused E.W. to travel in interstate commerce;

(ii)     That the defendant used force, coercion, duress and/or fraud to cause such travel;

(iii)    That as a result of such travel, the defendant committed assault by strangulation against E.W.;

(iv)    The defendant caused serious bodily injury to E.W.; and

(v)     E.W. was an intimate and dating partner of the defendant.

4.    **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On April 28, 2025, National Park Rangers observed a vehicle parked on a service road within the jurisdictional boundaries of the Gateway Arch National Park, within the Eastern District of Missouri. Gateway Arch National Park is within the special maritime and territorial jurisdiction of the United States, on land acquired for the use of the United States and under its concurrent jurisdiction. The Rangers observed a female, identified as E.W., exit the vehicle and approach.

E.W. told the Rangers she was trying to get back to Belleville, Illinois. At this time, Rangers observed the defendant approaching them as E.W. told the Rangers that he had put his hands on her and was going to steal her car. The Rangers handcuffed and detained the defendant.

The Rangers observed red marks on E.W.'s face, neck, arms, legs, and feet, as well as injuries to her fingers, all of which were photographed. E.W. identified the defendant as her boyfriend and told the Rangers that the incident began in Belleville, Illinois, where she and the defendant were arguing about song lyrics while in her vehicle. During the argument, the defendant attempted to exit the vehicle while it was moving. E.W. stopped the vehicle and tried to keep him in the vehicle by grabbing his arm. The defendant responded by grabbing her by the neck and shoving her head into the driver's side door. As a result of this physical assault, E.W.'s glasses were broken, in that the lens fell out of the frame and E.W. was not able to locate the lens at that time. E.W. indicated the defendant then got out of the car and began making a scene, so she followed him because she could not drive without her glasses and needed the defendant to drive her to her mother's home in Dupo, Illinois. Someone called 911 regarding this incident, relaying that they observed a male and female fighting and saw the

Page 4 of 15

male push the female to the ground and heard the female telling the male that he had broken her glasses.

The defendant wanted to be brought home to his grandfather's residence in St. Louis but agreed to drive E.W. home to her mother's house in Dupo and take an Uber from there. Instead the defendant drove towards his grandfather's residence in Saint Louis, Missouri. Once E.W. realized that defendant was not taking her to Dupo, she began pulling on the emergency brake and grabbing the steering wheel to make the defendant exit the highway. This was how they ended up on the service road on the Arch Grounds. E.W. told investigators that she did not agree to be taken to St. Louis, that she only agreed to be taken to Dupo, and that she felt like she got kidnapped in her own vehicle. The defendant reported that he had no other way to get to his home in St. Louis and that E.W. picked him up for work and returned him to the same residence on previous occasions.

Once the vehicle was stopped on the service road, the defendant left the vehicle but E.W. persuaded him again to return to the car as to not make a scene. E.W. got into the driver's seat and Defendant got into the passenger seat. Once in the car, the defendant stated that did not want to talk anymore with E.W. but rather just wanted to return to his grandfather. The argument continued and became physical. During the physical altercation, the defendant again began choking E. W., E.W. bit the defendant on the arm to free herself, and E.W. put the defendant in a leglock. Also, during the altercation, the defendant continued to hold E.W. by the neck and pushed her back, causing her hair to become tangled in the rearview mirror. The defendant shoved her down, causing the mirror to be ripped from the windshield. The defendant again grabbed E.W. by the neck E.W. bit the defendant on the arm and freed herself.

The defendant again left the car and E.W. locked him out. The defendant realized that he had some property in the car and began banging on the windows to let him back in. Eventually, E.W. cracked the window and the defendant was able to get his hand into the car and unlock it. The defendant began pulling items out of the car, including some of E.W.'s belongings. E.W. began grabbing at the defendant as he was pulling items out of the car and he responded by again grabbed her neck, slapping E.W. and spitting on her. She grabbed his testicles to get him to stop and the defendant let her go. E.W. again locked herself in the car and called her mother to have someone come get her. E.W. waited in her locked car and Park Rangers arrived shortly afterwards.

E.W. indicated that each time the defendant put his hands around her neck and choked her, she had difficulty breathing and at times, she began to lose her vision. E.W. also reported having trouble seeing out of her left eye, due to her glasses hitting her in the eye during the physical altercation. After the incident, E.W. was evaluated by medical staff, who determined that she had a corneal abrasion in her left eye, which has since been treated.

On scene, E.W. told the Rangers that the defendant was threatening to take her car and leave her stranded and even threatened to kill her, including while he was strangling her. She stated she was afraid that he would actually kill her. The Rangers reviewed CCTV footage from the service road, which showed the physical altercation. In the video, the defendant is seen with his hands around E.W.'s throat. E.W.'s injuries were photographed on scene. During an order of protection hearing on May 20, 2025, the defendant admitted under oath to putting his hands around E.W.'s throat, to choking her, slapping her, and spitting on her during this incident. He claimed that he did it because he was mad about the entire incident, including them arguing, wrestling, and breaking things in the car.

The defendant and E.W. are intimate or dating partners, in that they have been in a romantic relationship for a significant amount of time.

5.    **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime in Counts One, Two, and Three of the Indictment, to which the defendant is pleading guilty, is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

In the event the defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, the defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

6.    **U.S. SENTENCING GUIDELINES: 2025 MANUAL**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    A.    **Chapter 2 Offense Conduct:**

        **COUNT ONE: ASSAULT BY STRANGULATION**

        i.    **Base Offense Level:** The parties agree that the Base Offense Level for Count One is 14, as found in Section 2A2.2(a).

ii.      **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply: Under Section 2A2.2(b)(3), **five (5)** levels shall be added because the victim sustained serious bodily injury:

Under Section 2A2.2(b)(4), **three (3)** levels shall be added because the victim was strangled.

Both parties reserve the right to argue for or against the application of any other specific offense characteristic, but recognize that the district court's determination on the issue is final and neither party will appeal.

### COUNTS TWO AND THREE: INTERSTATE DOMESTIC VIOLENCE

i.      **Base Offense Level:**  The parties agree that the Base Offense Level for Counts Two and Three is 18, as found in Section 2A6.2(a).

ii.      **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply: Under Section 2A6.2(b)(1)(B), **two (2)** levels shall be added because the victim sustained bodily injury:

Under Section 2A6.2(b)(1)(C), **two (2)** levels shall be added because the victim was strangled.

Both parties reserve the right to argue for or against the application of any other specific offense characteristic, but recognize that the district court's determination on the issue is final and neither party will appeal.

B.      **Chapter 3 Adjustments:**

i.      **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the defendant has

clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

      ii.    **Other Adjustments:** The parties have no further agreement regarding any other adjustments. Both parties reserve the right to argue for or against the application of any chapter 3 adjustments, but recognize that the district court's determination on the issue is final and neither party will appeal.

      iii.    **Multiple Counts:** The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.

C.    **Estimated Total Offense Level:** The parties agree that the Total Offense Level for Counts One, Two, and Three is 19. The parties acknowledge that the offense level may also be increased when determining the combined offense level pursuant to Section 3D1.4.

D.    **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

E.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7.    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

A.    **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

i.    **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is

pleading guilty, and whether the defendant's conduct falls within the scope of the statue(s).

ii.    **Sentencing Issues:**  In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the defendant within or above the determined Sentencing Guidelines range.

B.    **Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

C.    **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8.    **OTHER:**

A.    **Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

B.    **Civil or Administrative Actions not Barred; Effect on Other Governmental**

**Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

C.      **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime the defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

D.      **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

E.      **Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

F.      **Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

G.      **Forfeiture:**  The defendant agrees to forfeit all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation, whether or not

they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9.    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the

waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the United States' case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10.    **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's

own free will and that the defendant is, in fact, guilty.

11.    **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12.    **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

| | |
|---|---|
| 2/18/26 | CATHERINE M. HOAG |
| Date | Assistant United States Attorney |
| 2/18/26 | DARRION LAMONT EVANS |
| Date | Defendant |
| 18 FEB 2026 | MARK A. HAMMER |
| Date | Attorney for Defendant |

Page 15 of 15